```
1   WO
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Pamela A Spendlove, | No. CV-17-08157-PCT-DGC |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Pamela Spendlove seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied her disability insurance benefits and supplemental security income under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. The Court finds that the administrative law judge's ("ALJ") decision is based on legal error, and will remand for further proceedings.

**I.    Background.**

Plaintiff is a 59 year old female who previously worked as an internal security manager, security officer, taxi driver, and emergency medical technician. A.R. 23. Plaintiff applied for disability insurance benefits and supplemental security income in July and August 2013, alleging disability beginning on June 22, 2012. A.R. 13. On January 5, 2016, Plaintiff testified at a hearing before an ALJ. *Id.* A vocational expert also testified. *Id.* On March 24, 2016, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 13-25. This became the

Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on June 4, 2017. A.R. 1-5.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* "The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] substantial rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") prevents her performance of any past relevant work.

If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show at step five that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016, and has not engaged in substantial gainful activity since June 22, 2012. A.R. 15. At step two, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, chronic pain syndrome, obesity, major depressive disorder, anxiety disorder, post-traumatic stress disorder, attention deficit hyperactivity disorder, and borderline personality disorder. A.R. 15. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R. 16. At step four, the ALJ found that Plaintiff had the RFC to perform medium work with some additional limitations, but that Plaintiff was unable to perform her past relevant work as an internal security manager, security officer, taxi driver, or emergency medical technician. A.R. 17-23. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, she was able to perform the requirements of occupations like hand packager, kitchen helper, and laboratory equipment cleaner. A.R. 24.

**IV.  Analysis.**

Plaintiff makes three arguments: (1) the ALJ erred by rejecting her treating physician's opinion, (2) the ALJ improperly credited the opinions of Dr. Hirdes and the state agency reviewing physicians, and (3) the ALJ erroneously discredited Plaintiff's symptom testimony. Doc. 11 at 9-25. Defendant summarizes the ALJ's decision, but offers few specific counterarguments. *See* Doc. 14.

### A. Medical Opinion Evidence.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(1), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(1)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation marks and citation omitted). Under either standard, "[t]he ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation marks and citation omitted).

### 1. Dr. Ramadan.

Dr. Mohamed Ramadan is a treating physician who opined in January 2016 that Plaintiff "may have difficulty with memory and understanding complicated instructions," is "unable to concentrate and maintain attention," and "may not be able to respond to work demands." A.R. 942. Because these opinions are inconsistent with those of the state agency non-examining physicians, they can be rejected for "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.

The ALJ discredited Dr. Ramadan's opinion for three reasons. The ALJ first noted that the opinion "is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." A.R. 22. The Ninth Circuit considered an identical issue in *Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014), where an ALJ rejected a treating physician's "check-box" opinion for the same reason. *Id.* at 1140. *Burrell* emphasized that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, *and unsupported by the record as a whole or by objective medical findings*." *Id.* (emphasis in original). Although "check-box" opinions may be conclusory and brief, *Burrell* reasoned that such opinions cannot be rejected unless they also are unsupported by the record as a whole. *Id.* Because the treating physician's conclusory opinion was consistent with the plaintiff's symptom testimony and the treatment notes, *Burrell* concluded that the ALJ erred in rejecting the opinion. *Id.*

Dr. Ramadan's opinions are conclusory and brief. A.R. 942. The record includes 50 pages of Dr. Ramadan's treatment notes (A.R. 847-96), but the ALJ did not identify any specific inconsistency within those notes (A.R. 22). Nor did the ALJ explain

- 5 -

whether Dr. Ramadan's opinions are unsupported by the record as a whole. A.R. 22. The Court therefore finds that this reason was not legitimate. Defendant's reliance on *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996), is misplaced. Doc. 14 at 3-4. *Crane* articulates a standard that is inconsistent with the later *Burrell* decision. *Compare* 775 F.3d at 1140, *with* 76 F.3d at 253.

The ALJ next emphasized that Dr. Ramadan's "assessment is quite vague and imprecise in nature, as 'may have' and 'may not' are not readily defined." A.R. 22. Plaintiff contends that physicians like Dr. Ramadan "could not reasonably be asked to determine [Plaintiff's] work capacities with absolute certainty[.]" Doc. 11 at 13. The Court disagrees. Dr. Ramadan opined that Plaintiff "may have difficulty with memory and understanding complicated instructions," and "may not be able to respond to work demands." A.R. 942. Because Dr. Ramadan does not elaborate, these opinions signal uncertainty about whether such limitations exist at all. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion[.]"). The Court concludes that this is a specific and legitimate reason to reject Dr. Ramadan's opinion.[1]

The ALJ finally noted that Dr. Ramadan's "assessment remains contradicted by [his] own treating notes and observations, which state [Plaintiff] was doing well with fairly unremarkable mental status examinations." A.R. 22 (citing 847-96). Plaintiff argues that the ALJ's citation to 50 pages of treatment notes is inadequate (Doc. 11 at 14), and the Court agrees. The ALJ's reasoning and broad citations do not explain how specific clinical findings are inconsistent with the doctor's limitations. The ALJ did not set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels*, 874 F.3d at 654.

---

[1] The Court agrees with Plaintiff that this reasoning does not apply to Dr. Ramadan's opinion that Plaintiff was "unable to concentrate and maintain attention." A.R. 942; *see also* Doc. 11 at 13-14. This opinion was unequivocal.

Even if the ALJ committed error in improperly weighing a medical opinion, that error will be harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115; *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Two of the ALJ's reasons to discredit Dr. Ramadan's opinion fall well short of the "detailed and thorough" analysis the Ninth Circuit requires. *Revels*, 874 F.3d at 654. One reason is specific and legitimate, but only applies to two of Dr. Ramadan's four limitations. This leaves intact Dr. Ramadan's opinion that Plaintiff was "unable to concentrate and maintain attention." A.R. 942. And the vocational expert testified at the hearing that an inability to maintain focus and concentration would impact Plaintiff's ability to work. A.R. 77. The Court therefore cannot conclude that the ALJ would have reached the same conclusions had she properly evaluated Dr. Ramadan's opinions. The ALJ's error was not harmless.

### 2. Dr. Hirdes.

The ALJ accorded great weight to the August 2006 opinion of Steven Hirdes, EdD. A.R. 21. The ALJ explained her reasons for assigning great weight even though Plaintiff alleges disability beginning in 2012:

> Dr. Hirdes opined there were moderate limitations performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, working in coordination with others without being distracted by them, interacting with the general public, and accepting instructions and responding appropriately to criticism. Although Dr. Hirdes met with the claimant years prior to the alleged onset date, this opinion was rendered by a qualified, objective acceptable medical source that considered the claimant's subjective complaints. As well, the rationale expressed by this examining psychologist and the conclusions reached are consistent with the treatment record, objective findings, opinion evidence, and the medical evidence as a whole. As such, I afford this opinion great weight.

A.R. 21.

Plaintiff contends that this was error because the ALJ did not explain "what in the 'medical evidence as a whole' bolstered the psychologist's assessment." Doc. 11 at 9.

But Plaintiff cites no authority for the proposition that an ALJ commits error merely by crediting a physician's opinion. *See* Doc. 11 at 9-12 (citing 20 C.F.R. § 404.1527(c) (describing relevant factors); *Diedrich v. Berryhill*, 874 F.3d 634, 639 (9th Cir. 2017) (error not to call a medical advisor when the onset of disability must be inferred from the record); *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (ALJ committed error by *rejecting* an opinion without sufficient reasons); *Garrison*, 759 F.3d at 1013 (9th Cir. 2014) (error to rely on a non-examining physician's opinion to *discredit* a treating physician's opinion); *Orn*, 495 F.3d at 631 (describing comparative weight of different medical opinions); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (describing standard for rejecting a claimant's symptom testimony); *Reed v. Massanari*, 270 F.3d 838, 842-45 (9th Cir. 2001) (error to refuse to order a consultative examination because "both available examiners with the appropriate specialization conclude that 'everybody' is disabled")); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (describing standard for rejecting a treating physician's opinion)).

Plaintiff also argues that "[t]here is no evidence the Hirdes assessment was relevant to [Plaintiff's] condition in 2012 and continuing." Doc. 11 at 10. But Plaintiff does not identify specific evidence that tends to undermine the ALJ's conclusion that Dr. Hirdes' opinion remains relevant and supported by substantial evidence. *See Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."). For these reasons, the Court cannot find error in the ALJ's decision to assign great weight to Dr. Hirdes' opinion.

### 3. State Agency Reviewing Physicians.

The ALJ accorded great weight to the mental health assessments of the state agency reviewing physicians who opined that Plaintiff could "perform simple, repetitive tasks with limited social interaction." A.R. 21. The ALJ reasoned that their opinions were consistent with the objective medical evidence, adequately addressed Plaintiff's

subjective complaints, and reflected a review of the entire record available at the time. A.R. 21.

Plaintiff contends that this was error because the ALJ failed to identify specific evidence that corroborates these opinions. Doc. 11 at 10. Again, Plaintiff cites no authority for the proposition that an ALJ commits error merely by crediting a physician's opinion. *See* Doc. 11 at 9-12.

Plaintiff also argues that the state agency reviewing physicians based their opinions on a more limited review of the record than Plaintiff's treating physician. Doc. 11 at 10. Plaintiff emphasizes that their opinions were issued in early 2014, and the treating physician rendered his conflicting opinion in January 2016. *Id.* Plaintiff states that the "state agency reviewers did not know about any evidence after the time those reviewers' assessment forms were completed," but cites no subsequent evidence that would undermine their opinions. *Id.* Plaintiff has not shown that the ALJ committed error.

**B. Plaintiff's Symptom Testimony.**

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Revels*, 874 F.3d at 655 (citing *Garrison*, 759 F.3d at 1014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of her alleged symptoms, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.*

The ALJ described Plaintiff's symptom testimony:

Disability was alleged[ly] due to post-traumatic stress disorder (PTSD), generalized anxiety/panic disorder, borderline personality disorder, attention deficit disorder, herniated discs in the cervical and lumbar spine, neuropathy of the arms and hands, and repair of torn meniscus in the left knee. According to [Plaintiff], she has anxiety and panic when going out in public and cries often. As of 2014, she did not leave her apartment and

> avoided all interaction with others. During the hearing, [Plaintiff] testified the pain in her neck causes numbness in her hands, which occurs 2-3 times per day. She has constant low back pain that radiates down her legs. The claimant testified she can stand for 15 minutes at a time, sit for 15 minutes at a time, and walk for 15 minutes without resting. She alleged [] being able to lift 5 pounds. In addition, the claimant testified of panic attacks that occur daily. She cannot follow a movie and avoids reading due to poor memory. The claimant testified she has difficulty interacting with others, including her family.

A.R. 18 (citations omitted).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent and credible. *See* A.R. 18. The ALJ provided nine reasons to support her finding (A.R. 19-23), and Plaintiff disputes three of them (Doc. 11 at 19-24).

### 1. First Disputed Reason.

In contrast to Plaintiff's allegations, the ALJ concluded that Plaintiff's mental impairments caused only non-severe symptoms. A.R. 20. The ALJ described Plaintiff's mental health records, which show symptom relief and normal observations. A.R. 20. The ALJ also emphasized that the alleged severity of Plaintiff's mental limitations is inconsistent with her failure to "routinely keep scheduled appointments for therapy/ counseling" or employ the relaxation breathing techniques she had learned. A.R. 20.

Plaintiff contends that the ALJ erroneously relied on isolated findings to conclude that her treatment was at least somewhat effective. *See* Doc. 11 at 19-21. Plaintiff emphasizes that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Doc. 11 at 20-21 (quoting *Garrison*, 759 F.3d at 1017).

- 10 -

Plaintiff concedes that the ALJ's citations reflect some effective treatment, but she emphasizes that they also demonstrate her continued struggle with mental impairments. Doc. 11 at 19-20 (citing A.R. 631 (medication relieves symptoms, but she still struggles with panic, depression, post-traumatic stress, and attention deficit), 638 (same), 758 (medication relieves anxiety, but psychotherapy relieves depression)). The ALJ agreed that Plaintiff continued to struggle with mental health issues. A.R. 20 (Plaintiff had "waxing and waning symptoms"). But Plaintiff offers only conclusory arguments that the ALJ cited isolated instances of improvement. Doc. 11 at 19-21. Plaintiff does not present evidence or argument that the ALJ ignored other specific evidence that Plaintiff's treatment was unsuccessful. *See id.*

Plaintiff next argues that the ALJ erred by relying on the fact that she had not received inpatient psychiatric care. Doc. 11 at 21. Inpatient hospitalization, Plaintiff argues, "is not required to validate the severity of a claimant's reported symptoms." *Id.* Plaintiff misreads the ALJ's reasoning. The ALJ concluded that the medical evidence supports a finding of non-severe symptoms associated with Plaintiff's mental impairments. A.R. 20. The ALJ cited medical evidence that tends to show that Plaintiff suffered moderate, as opposed to severe, symptoms. A.R. 20. Together with the other evidence suggesting moderate symptoms and effective treatment, the ALJ could reasonably rely on the lack of hospitalization to reach a conclusion about the severity of Plaintiff's alleged symptoms. The Court concludes that this is a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 2. Second Disputed Reason.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an

ALJ may use a claimant's daily activities to discredit symptom testimony only if the activities contradict the claimed limitations, or the claimant "spend[s] a *substantial* part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added).

The ALJ recited Plaintiff's daily activities, then concluded that "[t]he physical and mental capabilities requisite to performing many of the tasks described above, as well as the social interactions, replicate those necessary for obtaining and maintaining employment." A.R. 21. Plaintiff contends that this reasoning is insufficient because it fails to tie specific daily activities to a sustained ability to perform in the workplace (Doc. 11 at 21-24), and the Court agrees. The ALJ did not find that Plaintiff spent a substantial part of her day performing these activities. Nor did the ALJ explain why Plaintiff's activities were inconsistent with her claimed limitations. The Court cannot conclude that this is a clear and convincing reason to reject Plaintiff's symptom testimony.

### 3. Third Disputed Reason.

The ALJ concluded that five specific inconsistencies between Plaintiff's testimony and the medical record undermined Plaintiff's credibility. A.R. 20. For example, the ALJ reasoned that Plaintiff's "interest[] in looking for full-time work" contradicts "her allegations of work preclusive symptoms and limitations[.]" A.R. 20 (citing A.R. 444-571). Plaintiff contends that her desire to work does not establish that she was able to work. Doc. 11 at 23 n.15. The Court agrees. *Cf. Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (failed attempt to work does not necessarily establish that a claimant can maintain employment). The ALJ may have had reasons to believe that Plaintiff's desire to work established her ability to work, but her bare citation to 128 pages of treatment records provides no explanation.

Plaintiff does not challenge the other four inconsistencies identified in the ALJ's decision. A.R. 20. For this reason, there remains substantial evidence supporting the ALJ's conclusion that Plaintiff "is unreliable, given her apparent tendency to exaggerate,

or misrepresent relevant or subjective information." *Id.*; *see also Molina*, 674 F.3d at 1115. The Court accordingly concludes that this is a clear and convincing reason to discredit Plaintiff's symptom testimony.

### 4. Whether Error was Harmless.

One of the ALJ's nine reasons to discredit Plaintiff's symptom testimony is inadequate, but the Court cannot conclude that this inadequacy is so significant as to undermine the ultimate credibility determination. The Court finds that two reasons are clear and convincing, and Plaintiff leaves the other six unchallenged.[2] There remains substantial evidence supporting the ALJ's credibility determination, and the error does not affect the ultimate nondisability determination. *See Molina*, 674 F.3d at 1115. The ALJ's error was harmless.[3]

## V. Scope of Remand.

The ALJ erred in her consideration of Dr. Ramadan's medical opinion. Plaintiff contends that, crediting Dr. Ramadan's opinions as true, the Court must remand for an award of benefits. Doc. 11 at 16, 25. Defendant counters that the appropriate remedy is a remand for further proceedings. Doc. 14 at 15-16.

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

---

[2] Among others, these unchallenged reasons include (1) Plaintiff's routine and effective treatment of degenerative disc disease (A.R. 19), and (2) Plaintiff's unpersuasive appearance and demeanor at the hearing (A.R. 22).

[3] Plaintiff appears to argue for the first time in her reply brief that the ALJ's credibility determination must be narrowly tailored to each symptom alleged. *See* Doc. 15 at 6-7. The inconsistencies with respect to her physical impairments, Plaintiff argues, do not undermine her allegations of mental impairments. *See id.* The Court will not consider arguments raised for the first time in a reply brief. *Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007). In any event, Plaintiff does not cite any controlling authority to support this proposition.

- 13 -

> First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

Applying step two of the Ninth Circuit's test, the Court concludes that outstanding issues must be resolved before a disability determination can be made. The ALJ erred in discrediting Dr. Ramadan's opinion that Plaintiff was "unable to concentrate and maintain attention." A.R. 942. The vocational expert briefly addressed mental impairments, testifying that an inability to maintain focus and concentration would "impact" Plaintiff's ability to work, but did not elaborate. A.R. 77. This creates an unresolved outstanding issue: what is the impact of Dr. Ramadan's opinion on the disability determination? The Court concludes that further proceedings on this issue would be useful, and will remand for such proceedings.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 31st day of July, 2018.

*David G. Campbell*
David G. Campbell
United States District Judge